# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

RONNA WHITE, as Special Administrator
of the Estate of AUSTIN THOMAS WHITE,

                     Plaintiff,

*v.*

(1) CITY OF SALLISAW;
(2) CHIEF TERRY FRANKLIN, in his
individual capacity;
(3) OFFICER JUDDAS BOOKER, in his
individual capacity; and
(4) OFFICER BO FOREHAND, in his
individual capacity,

                  Defendants.

Case No. 6:25-cv-200-JAR

## OPINION AND ORDER

Before the Court is the joint motion to dismiss filed by defendants City of Sallisaw (the "City"), Chief Terry Franklin ("Chief Franklin"), Officer Juddas Booker ("Officer Booker"), and Officer Bo Forehand ("Officer Forehand"), each sued in his individual capacity, pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. 18].[1] Plaintiff Ronna White, as Special Administrator of the Estate of Austin Thomas White (the "decedent" or "Mr. White"), brings this civil-rights action under 42 U.S.C. § 1983 based on allegations that the individual defendants violated the decedent's Fourteenth Amendment rights by acting with deliberate indifference to his serious mental-health needs while he was detained at the Sallisaw City Jail from June 13 to June 18, 2024.

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers assigned by CM/ECF.

# I.    BACKGROUND

## A.    PLAINTIFF'S ALLEGATIONS

Plaintiff is the decedent's mother. She alleges that Mr. White was a pretrial detainee held in a Sallisaw Police Department jail cell beginning June 13, 2024, on a public-intoxication charge. [Dkt. 2, ¶¶ 1, 7]. During a prior detention in January 2024, plaintiff informed Chief Franklin that Mr. White had mental-health issues, and jail staff transported Mr. White to CREOK for counseling. [*Id.* ¶ 7].

Plaintiff alleges that Mr. White had maintained sobriety for approximately 18 years but relapsed after his son died by suicide on April 1, 2024. She contends that Mr. White was despondent due to his son's death and his inability to secure release from custody. [*Id.* ¶ 8]. According to the complaint, on or about June 17, 2024,[2] Mr. White told plaintiff during a telephone call that he was considering suicide by using a telephone cord. Each jail cell allegedly contained a pay phone with a "longer than recommended" metallic cord. Plaintiff further alleges that Officer Billy Oliver informed Chief Franklin of the hazard posed by the over-long telephone cords, but no corrective action was taken. [*Id.* ¶ 9].

Plaintiff contends that Mr. White was supposed to be under continuous, 24-hour surveillance. Nonetheless, at approximately 12:51 p.m. on June 18, 2024, Mr. White used the telephone cord to hang himself. Plaintiff alleges that Officer Booker, who was responsible for monitoring the video feed from Mr. White's cell, failed to

---

[2] The complaint alleges that Mr. White was detained on June 13, 2024 and died on June 18, 2024, yet paragraph 9 refers to "July 17, 2024." [Dkt. 2, ¶¶ 7, 9, 12]. For purposes of this Order, the Court understands the reference to "July 17, 2024" as a typographical error and construes it as June 17, 2024.

observe Mr. White loop the cord around his neck. The motion-sensitive camera allegedly stopped recording at 1:16 p.m. due to lack of movement in Mr. White's cell. Plaintiff asserts that Mr. White was unattended during this period and could have been rescued. [*Id*. ¶ 10].

Plaintiff further alleges that Officer Forehand was present in the hallway outside Mr. White's cell but failed to check on him. At approximately 1:20 p.m., another inmate observed Mr. White hanging and ran to alert staff. [*Id*. ¶ 11]. Only then did Officers Booker and Forehand enter the cell and attempt resuscitation. Mr. White was transported to Northeastern Hospital and was later airlifted to St. John Hospital in Tulsa, Oklahoma, where he died on June 18, 2024. [*Id*. ¶ 12].

### B.  RELEVANT PROCEDURAL HISTORY

Defendants filed their joint motion to dismiss on October 7, 2025, arguing that the complaint fails to plausibly allege a constitutional violation by any individual defendant or a basis for municipal liability, and that the individual defendants are entitled to qualified immunity. [Dkt. 18]. Plaintiff responded in opposition [Dkt. 19], and defendants replied [Dkt. 20]. Plaintiff filed a surreply with leave of Court [Dkt. 28], and defendants filed a response to the surreply [Dkt. 31].[3]

### II.    STANDARDS OF REVIEW

### A.  RULE 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain

---

[3] By express consent of all parties [Dkt. 34], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned United States Magistrate Judge exercises complete jurisdiction over this action including trial and the entry of final judgment.

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible when the pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. The Court disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action[.]" *Id*.; *accord Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011). The question is whether the complaint's well-pleaded factual allegations, assumed true, "plausibly give rise to an entitlement to relief." *Id*. at 679; *see Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

In § 1983 cases, it is particularly important "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). A plaintiff must identify specific actions taken by particular defendants in order to state a viable § 1983 claim. *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013).

## B.    SECTION 1983 AND QUALIFIED IMMUNITY

Section 1983 imposes liability on any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States" to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Persons sued under § 1983 in their individual capacity may invoke the defense of qualified immunity. *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021). Qualified immunity protects government officials from liability for civil

4

damages insofar as their conduct does not violate clearly established statutory or constitutional rights. _Pearson v. Callahan_, 555 U.S. 223, 231 (2009).

When a defendant asserts qualified immunity in a Rule 12(b)(6) motion, as is the case here, the burden shifts to the plaintiff to show both: (1) that a constitutional violation occurred and (2) that the constitutional right was clearly established at the time of the alleged violation. _Doe v. Woodard_, 912 F.3d 1278, 1289 (10th Cir. 2019). Courts have discretion to decide which prong to address first. _Pearson_, _supra_, at 236.

A right is "clearly established" if it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." _Mullenix v. Luna_, 577 U.S. 7, 11 (2015) (per curiam) (citation omitted). A plaintiff ordinarily must identify either a Supreme Court or published Tenth Circuit decision on point or show that the "weight of the authority" from other courts clearly established the right. _A.N. ex rel. Ponder v. Syling_, 928 F.3d 1191, 1197 (10th Cir. 2019). A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." _White v. Pauly_, 580 U.S. 73, 79 (2017) (per curiam) (quotations omitted). Courts must not define clearly established law at "a high level of generality." _Id_.

## C.   DELIBERATE INDIFFERENCE

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." _Sealock v. Colorado_, 218 F.3d 1205, 1209 (10th Cir. 2000) (_citing Estelle v. Gamble_, 429 U.S. 97, 102 (1976)); _accord Farmer v. Brennan_, 511 U.S. 825, 828 (1994). Although pretrial detainees like Mr. White are protected

5

under the Due Process Clause of the Fourteenth Amendment, the same deliberate-indifference standard applies. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). Claims involving jail suicide are analyzed as deliberate-indifference claims regarding serious medical needs. *See, e.g.*, *Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1186 (10th Cir. 2022); *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015).

"Deliberate indifference" has both objective and subjective components. *Sealock*, 218 F.3d at 1209. The objective component is met if the deprivation is "sufficiently serious." *Farmer*, 511 U.S. at 834. Death by suicide satisfies that requirement. *Est. of Burgaz*, *supra*, at 1186; *accord Cox*, *supra*, at 1240 n.3. Here, defendants concede that the objective prong is satisfied. [Dkt. 18 at 26].

The subjective component is satisfied if the defendant-official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The official must "be aware of the facts from which the inference of a substantial risk of serious harm could be drawn" and "must also draw that inference." *Id*. In jail-suicide cases, the Tenth Circuit has framed this requirement as "actual knowledge" of "an individual inmate's substantial risk of suicide." *Cox*, 800 F.3d at 1249. A factfinder may infer an official knew of a substantial risk "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. However, "[a] showing of simple or even heightened negligence will not suffice." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). In addition, a plaintiff must plausibly allege the official's deliberate indifference was a cause of the constitutional injury. *See id*. at 404-05.

6

### III.   ANALYSIS

The Court first considers whether plaintiff has overcome the individual defendants' qualified-immunity defense, then turns to whether she has stated a plausible municipal-liability claim against the City.

#### A.   INDIVIDUAL-CAPACITY LIABILITY

##### 1.   Alleged Constitutional Violations

To state a § 1983 claim against a state actor in his or her individual capacity, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

Supervisory liability is not a form of vicarious liability. *See Iqbal*, 556 U.S. at 676 (defendant-supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). It requires an "affirmative link" between the supervisor and the constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195, 1198 (10th Cir. 2010). A supervisor such as a police chief may be liable in his individual capacity where he (1) "promulgated, created, implemented, or possessed responsibility for the continued operation of a policy" that (2) caused the complained of constitutional harm, and (3) acted with the state of mind

required to establish the alleged constitutional deprivation. *Id*. at 1199.

### a.    *Chief Franklin*

At the pleading stage, plaintiff must allege facts that, accepted as true, plausibly show that Chief Franklin, either directly or through a policy he created or maintained, violated Mr. White's Fourteenth Amendment right to adequate medical care, including reasonable measures to prevent suicide. *See Iqbal*, 556 U.S. at 676; *Dodds*, 614 F.3d at 1199; *Cox*, 800 F.3d at 1248-50.

The complaint alleges that during a prior detention in January 2024, plaintiff informed Franklin "that [Mr. White] had mental health issues," and jail staff transported Mr. White to CREOK for counseling. [Dkt. 2, ¶ 7]. It further alleges that Franklin was "subjectively aware of [Mr. White's] mental health issues and his suicidal tendencies." [*Id*. ¶ 17]. Plaintiff also alleges that Officer Oliver warned Franklin that the metal telephone cords in the jail cells were too long and posed a strangulation risk, yet Franklin did not replace or shorten them. [*Id*. ¶¶ 9, 18]. Finally, plaintiff alleges that Franklin failed to train and supervise jail staff regarding the handling of suicidal detainees. [*Id*. ¶ 19].

Under *Iqbal*, the Court must distinguish factual allegations from bare legal conclusions. 556 U.S. at 678-79. The allegations that plaintiff personally warned Franklin of Mr. White's mental-health issues and that the jail responded by transporting Mr. White for counseling are factual and must be accepted as true. [*Id*. ¶ 7]. The allegation that Oliver specifically warned Franklin about the dangerous, over-long phone cords is likewise factual and must be credited. [*Id*. ¶ 9]. By contrast,

the bare assertion that Franklin was "subjectively aware" of Mr. White's "suicidal tendencies" parrots the legal standard and, standing alone, is not itself entitled to the presumption of truth. [*Id*. ¶ 17]. Read together with the specific factual allegations in paragraph 7, however, paragraph 17 reasonably supports the inference—at least at the pleading stage—that plaintiff's January 2024 communication to Franklin encompassed both serious mental-health concerns and suicidal tendencies. At this stage, the Court may rely on circumstantial factual allegations to infer actual knowledge, particularly where the alleged risk was both specifically communicated and obvious. *See, e.g., Farmer*, 511 U.S. at 842; *Cox*, 800 F.3d at 1249-50; *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005). Whether discovery ultimately supports that inference is a question for summary judgment.

Viewed in the light most favorable to plaintiff, the complaint plausibly alleges that, by June 2024, Franklin had actual knowledge of two critical facts: (1) Mr. White was a detainee with serious mental-health problems and suicidal tendencies; and (2) the in-cell telephone cords were an obvious ligature hazard that could be used as a noose. Franklin's alleged failure, over time, to take any reasonable measures in response—such as replacing or shortening the cords or enhancing suicide-prevention training and monitoring—plausibly alleges that he "set in motion a series of events that he knew or reasonably should have known" would result in the deprivation of Mr. White's constitutional rights. *See Schneider v. City of Grand Junction*, 717 F.3d 760, 768 (10th Cir. 2013).

In *Cox*, the Tenth Circuit held that, in jail-suicide cases, the plaintiff must

show "actual knowledge by a prison official of an individual inmate's substantial risk of suicide" and a failure to take reasonable measures to abate that risk. 800 F.3d at 1249-50. Accepting the complaint's allegations as true, Franklin knew of Mr. White's suicidal tendencies and of the specific, easily remediable risk posed by the over-long cords yet allegedly did nothing. At this stage, those allegations are sufficient to plead the subjective component of deliberate indifference as to Franklin. *See Farmer*, 511 U.S. at 842 (knowledge may be inferred where the risk is obvious). Plaintiff has also plausibly pleaded causation at this stage by alleging that Franklin knowingly left in place the very ligature hazard Mr. White used and failed to implement training or monitoring measures that, if used, could have prevented the suicide.

The Court emphasizes that plaintiff's supervisory theory is narrow. She alleges that Franklin, as policymaker, knowingly allowed a suicidal detainee to remain in a cell equipped with a known ligature hazard and failed to implement suicide-prevention training or monitoring adequate to address that known risk. That theory identifies the required "affirmative link" between Franklin's own policy-level conduct and the alleged constitutional deprivation. *See Dodds*, 614 F.3d at 1195-96, 1199. The Court therefore concludes that plaintiff has plausibly alleged a constitutional violation by Chief Franklin in his supervisory capacity, satisfying the first prong of the qualified-immunity analysis at the pleading stage.

### b.    *Officers Booker and Forehand*

To state a § 1983 claim against Officers Booker and Forehand, plaintiff must allege that each officer, through his own conduct, knew of and disregarded an

10

excessive risk that Mr. White would commit suicide. *See Iqbal*, 556 U.S. at 676; *Cox*, 800 F.3d at 1248-50.

The complaint alleges that Mr. White was supposed to be under "continuous, 24-hour surveillance"; that at approximately 12:51 p.m. he looped the telephone cord around his neck; that the motion-sensitive camera stopped recording at 1:16 p.m.; and that during this period Mr. White could have been rescued. [Dkt. 2, ¶ 10]. Plaintiff further alleges that Booker, the dispatcher, was responsible for monitoring the video feed but "failed to observe" Mr. White hanging and did not intervene until alerted by another inmate. [*Id.* ¶¶ 10-11, 20-21]. She alleges that Forehand was in the hallway outside the cell but "made no attempt to check on [Mr. White's] welfare" until after the inmate's alert. [*Id.* ¶ 11, 22-23]. The complaint also asserts, in formulaic terms, that each officer was "subjectively aware" of Mr. White's suicidal tendencies. [*Id.* ¶¶ 20, 22].

The Court accepts as true the narrative allegations concerning Booker's and Forehand's assigned duties and their failure to monitor or check on Mr. White. Those allegations describe conduct that, if proven, may amount to negligence or even gross negligence. But the complaint does not allege any non-conclusory facts from which the Court can reasonably infer that either Booker or Forehand actually knew that Mr. White faced a substantial risk of suicide and drew that inference. *See Farmer*, 511 U.S. at 837; *Cox*, 800 F.3d at 1248-50. Plaintiff does not allege that Mr. White ever communicated suicidal thoughts to either officer, that they were informed of any prior attempts or threats of suicide, or that they observed self-harming behavior

11

comparable to the overt, contemporaneous conduct at issue in _Lieberenz v. Wilson_, No. 23-1055, 2024 WL 2952150, at *1-2 (10th Cir. June 12, 2024) (unpublished), where the detainee announced: "I'm trying to kill myself right now" and repeatedly struck his head in the officers' presence.

Absent factual allegations tying Booker or Forehand to actual knowledge of Mr. White's specific suicide risk, their alleged failures to adequately monitor the camera or to look into the cell sound in negligence. _See Brown_, 520 U.S. at 410. Those allegations do not satisfy the "extremely rigorous" deliberate-indifference standard in jail-suicide cases. _Est. of Hocker v. Walsh_, 22 F.3d 995, 1000 (10th Cir. 1994). Put differently, because plaintiff has not alleged facts showing that either Booker or Forehand had actual knowledge that Mr. White presented a substantial risk of suicide, _Cox_ forecloses a deliberate-indifference claim on these allegations. _See_ 800 F.3d at 1249-50. The complaint therefore fails to plausibly allege a constitutional violation by Officers Booker or Forehand, and they are entitled to qualified immunity on that basis.

### 2.   Clearly Established Law

Even when a complaint plausibly alleges a constitutional violation, a defendant is entitled to qualified immunity unless the plaintiff shows that the right was "clearly established" at the time of the challenged conduct. The clearly-established inquiry asks whether existing precedent placed the constitutional question "beyond debate" for a reasonable official in the defendant's position. _Ashcroft v. al-Kidd_, 563 U.S. 731, 741 (2011). Plaintiff bears the burden to identify clearly

established law as to each individual defendant. *See* <u>Woodard</u>, 912 F.3d at 1289.

### a.  *Chief Franklin*

As discussed, plaintiff's supervisory theory against Chief Franklin is that he knew Mr. White was a suicidal detainee with severe mental-health issues and, despite a direct warning that the in-cell phone cords were excessively long, failed to take reasonable steps to mitigate that obvious ligature hazard.

Long before June 2024, the Tenth Circuit held that pretrial detainees are entitled under the Fourteenth Amendment to the same protection regarding medical care as convicted prisoners receive under the Eighth Amendment, and that this includes reasonable measures to prevent suicide when an official has subjective knowledge of a substantial suicide risk. *See, e.g.,* <u>Martin v. Bd. of Cnty. Comm'rs</u>, 909 F.2d 402, 406 (10th Cir. 1990) (pretrial detainees entitled to the same degree of medical-care protection as convicted inmates); <u>Gaston v. Ploeger</u>, 229 Fed. Appx. 702, 710 (10th Cir. 2007) (unpublished) (treating suicide as satisfying the objective prong; plaintiff must show jailer was deliberately indifferent to a substantial risk of suicide); <u>Mata</u>, 427 F.3d at 752 (serious medical need includes conditions and warning signs so "obvious" that even a layperson would recognize the need for immediate intervention); <u>Cox</u>, 800 F.3d at 1248-49 (supervisory jail liability requires "actual knowledge … of an individual inmate's substantial risk of suicide" and failure to take reasonable steps once that risk is known).

Plaintiff also relies on <u>Lieberenz</u>, where the Tenth Circuit—drawing on <u>Cox</u>, <u>Mata</u>, and similar cases—held that, as of November 2019, it was clearly established

13

that "prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pretrial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk." 2024 WL 2952150, at *8-10. Although *Lieberenz* is unpublished and therefore not precedential, the Tenth Circuit permits citation to unpublished decisions for their persuasive value and has recognized that such decisions can illuminate how existing precedent applies in particular contexts. *See* 10th Cir. R. 32.1(A); *Grissom v. Roberts*, 902 F.3d 1162, 1168-69 (10th Cir. 2018). *Lieberenz* is significant because it synthesizes published Tenth Circuit authority into a clear rule for jail-suicide cases: once an official has subjective knowledge that a detainee presents a substantial suicide risk, the official must take reasonable preventive steps; failing to do so violates clearly established law.

Plaintiff further cites *Holbert v. Cimmarron Cnty. Sheriff's Dep't*, No. 20-CIV-8887-R, 2021 WL 111868 (W.D. Okla., Jan. 12, 2021), which, although a district-court decision, applies the same Tenth Circuit framework to a closely analogous scenario. In *Holbert*, the plaintiff alleged that the sheriff knew of the detainee's serious mental-health issues and suicide risk yet housed him alone in a cell with an extension cord that the detainee used to hang himself. *Id*. at *1, 4. Relying on *Martin*, *Gaston*, *Cox*, and similar cases, the district court held it was clearly established that jail officials must take reasonable measures to prevent suicide when they know of a serious risk, and it denied qualified immunity to the sheriff at the pleading stage. *Id*. at *3-4.

This Court does not recognize a novel right to any particular suicide-prevention protocol. Instead, it applies the longstanding rule—repeatedly articulated by the

14

Tenth Circuit—that a jail policymaker who has subjective knowledge that a detainee is a substantial suicide risk, and who also knows of an obvious, readily remediable ligature hazard in that detainee's cell, must take reasonable steps to mitigate that hazard; doing nothing violates the detainee's clearly established Fourteenth Amendment rights. *See, e.g.*, *Martin*, 909 F.2d at 406; *Gaston*, 229 Fed. Appx. at 710; *Mata*, 427 F.3d at 751-522; *Cox*; 800 F.3d at 1248-50; *Lieberenz*, 2024 WL 2952150 at *8-10; *Holbert*, 2021 WL 111868, at *1-4.[4]

Accepting the complaint's allegations as true, Chief Franklin had subjective knowledge of both Mr. White's substantial suicide risk and the specific ligature hazard posed by the over-long phone cords, yet allegedly took no preventive action. Under the body of law summarized above, a reasonable chief of police in Franklin's position would have understood that leaving a known suicidal detainee in a cell with a known, easily remediable ligature hazard without any additional suicide-prevention response violated Mr. White's rights. At this early stage, the Court concludes that plaintiff has minimally carried her burden to show that the right at issue, as applied to Franklin's narrow supervisory conduct, was clearly established.

---

[4] *See, e.g.,* [Dkt. 19 at at 3 (relying on *Martin*), at 3, 4 (relying on *Gaston*), at 3, 5, 7 (relying on *Cox*), at 4, 5, 7 (relying on *Mata*), at 2, 9 (relying on *Lieberenz*), at 2, 7, 8 (relying on *Holbert*)]; *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (10th Cir. 2021) (*citing Cox*, 800 F.3d at 1248-49) ("[P]rison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk."); *George, on behalf of Bradshaw v. Beaver Cnty.*, 32 F.4th 1231, 1249-50 (10th Cir. 2015) (reaffirming suicide claims require proof that officials failed to take reasonable steps to protect an inmate from suicide despite "actual knowledge … of an individual inmate's substantial risk of suicide" (*quoting Cox*, 800 F.3d at 1249)); *Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 865-69 (10th Cir. 1997) (treating jail-suicide claims as medical-care claims and explaining officials may be liable where, despite knowledge of suicide risk, they leave in place obvious, easily mitigated means of self-harm and take no reasonable protective steps).

Qualified immunity is therefore denied as to Chief Franklin on this specific supervisory claim, without prejudice to renewal on a more fully developed summary-judgment record.

### b.    *Officers Booker and Forehand*

Even assuming the complaint plausibly could be read to allege constitutional violations by Officers Booker or Forehand, plaintiff has not identified any Supreme Court or published Tenth Circuit decision clearly establishing that a dispatcher who fails to observe a suicide attempt on a video monitor, or a hallway officer who fails to look into a cell during a particular time window, violates the Constitution in the absence of factual allegations showing that those officers had actual knowledge of the detainee's substantial suicide risk. The suicide-risk cases plaintiff cites—*Martin*, *Gaston*, *Cox*, and related authority—clearly establish that officials who know of a substantial suicide risk must not be deliberately indifferent, but they do not "squarely govern" the conduct alleged here. *See Kisela v. Hughes*, 584 U.S. 100, 104-05 (2018).

Nor is this, as to Booker and Forehand, one of the "rare" cases in which the unlawfulness of the conduct is so obvious that detailed precedent is unnecessary. *See Hope v. Pelzer*, 536 U.S. 730, 741-45 (2002). The complaint alleges failures to monitor or check on Mr. White, but, as discussed, does not include non-conclusory facts showing that either officer actually knew of his specific suicide risk. Under these circumstances, existing precedent would not have made it "beyond debate" that their conduct, though potentially negligent, violated clearly established law. *See al-Kidd*, 563 U.S. at 741. Indeed, unlike the circumstances in *Hope*, the conduct alleged here

is not intentional punishment of an obvious unlawful kind, but at most negligent failures to monitor and check on Mr. White; that is not the sort of rare case in which obviousness alone can clearly establish the law. Accordingly, plaintiff has not met her burden on the clearly-established prong as to Officers Booker and Forehand. They are therefore entitled to qualified immunity.

### B.    MUNICIPAL LIABILITY

The Tenth Circuit addressed municipal liability under § 1983 in *Waller v. City & Cnty. of Denver*, 932 F.3d 1277 (10th Cir. 2019). In so doing, the court stated:

> The Supreme Court has made clear that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691. Instead, the government as an entity may only be held liable when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *Id.* at 694.

> Thus, to establish municipal liability, a plaintiff must first demonstrate a municipal policy or custom, which may take one of the following forms:

>> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

> *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

> ****

> After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the

17

injury alleged. *Bryson*, 627 F.3d at 788. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. *Brown*, 520 U.S. at 405. The causation element is applied with especial rigor when the municipal policy or practice is itself unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring. *Schneider*, 717 F.3d at 770.

Finally, at least for claims of inadequate hiring, training, or other supervisory practices, a plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Brown*, 520 U.S. at 407. Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action, *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (*quoting Brown*, 520 U.S. at 410), as a less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities, *id*. at 62 (*quoting City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). In most instances, notice can be established by proving the existence of a pattern of tortious conduct. *Id*. Deliberate indifference may be found absent a pattern of unconstitutional behavior only in a narrow range of circumstances, where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction. *Id*. at 1307-08 (*quoting Brown*, 520 U.S. at 409).

*Waller*, 932 F.3d at 1283-84 (alterations and internal quotation marks omitted).

Since *City of Canton*, the Supreme Court has reaffirmed "single-incident" failure-to-train municipal liability "in a narrow range of circumstances" where a violation of federal rights may be "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Brown*, 520 U.S. at 409. The Supreme Court also recognized that *City of Canton* "sought not to foreclose the possibility, however rare, that the unconstitutional

18

consequence of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." _Connick_, 563 U.S. at 64. Thus, a policy or custom may be inferred when policymakers know to a "moral certainty" that their employees will confront a particular recurring situation, that the situation presents a difficult choice that training would make less difficult, and that the wrong choice will frequently cause constitutional violations. _Allen v. Muskogee_, 119 F.3d 837, 842-45 (10th Cir. 1997); _Olsen v. Layton Hills Mall_, 312 F.3d 1304, 1318-20 (10th Cir. 2002); _Lance v. Morris_, 985 F.3d 787, 800-03 (10th Cir. 2021).

The Tenth Circuit treats allegations of failure to train and failure to supervise the "same way." _Whitewater v. Goss_, 192 Fed. Appx. 794, 797 (10th Cir. 2006) (unpublished). To state a failure-to-train or failure-to-supervise claim under a single-incident theory, a plaintiff must allege facts showing (1) the existence of a policy or custom involving deficient training or supervision, (2) an injury caused by the policy that is "obvious" and "closely related," and (3) that the municipality adopted the policy or custom with deliberate indifference to the injury. _Lance_, _supra_, at 800.

Plaintiff's theory of municipal liability rests on four paragraphs alleging that the City: (1) has a policy of failing to provide adequate mental-health services to pretrial detainees with suicidal tendencies; (2) has a policy of failing to train jail personnel regarding such detainees; (3) has a policy of failing to provide effective supervision of personnel dealing with such detainees; and (4) is deliberately indifferent to the serious medical needs of suicidal detainees. [Dkt. 2, ¶¶ 13-16]. Standing alone, these allegations are cast at a high level of generality and essentially

19

recite the elements of a municipal-liability claim. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (explaining that mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" in a complaint "will not suffice").

These allegations do not, however, stand alone. As discussed, the complaint also alleges that:

- during a prior detention in January 2024, plaintiff informed Chief Franklin that Mr. White had serious mental-health issues and suicidal tendencies, and the jail responded by transporting Mr. White to CREOK for counseling [*id.* ¶¶ 7, 17];

- Officer Oliver later warned Franklin that the metal telephone cords in the cells were longer than recommended and obviously posed a strangulation hazard, yet Franklin did not replace or shorten them [*id.* ¶¶ 9, 18];

- despite this knowledge, the jail housed Mr. White in a cell under purported "continuous, 24-hour surveillance" with the over-long phone cord while in fact relying on a motion-sensitive camera that stopped recording for lack of movement and was not monitored in a way that detected the hanging for approximately 25 minutes [*id.* ¶¶ 10-11]; and

- Franklin failed to train or supervise jail staff regarding suicide-prevention measures for detainees like Mr. White [*id.* ¶ 19].

Taken as true, these allegations plausibly describe decisions and omissions by an official with final policymaking authority regarding suicide-prevention equipment, training, and monitoring at the Sallisaw City Jail. *See Bryson*, 627 F.3d at 788. They permit a reasonable inference that the City, acting through Chief Franklin, maintained a policy or custom of (1) leaving in place over-long, known ligature-type telephone cords in jail cells, and (2) failing to adopt or implement suicide-prevention training or monitoring procedures adequate to protect detainees like Mr. White, despite actual notice of his suicide risk and the specific hazard.

20

At the pleading stage, plaintiff is not required to *prove* a long-standing pattern of similar suicides or produce detailed policy manuals. The question is whether the complaint's well-pleaded factual allegations, assumed true, allow the reasonable inference that the City, acting through Chief Franklin as final policymaker, maintained a policy or custom that was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694; *Schneider*, 717 F.3d at 770-71. On the narrow theory sustained in this Order—deliberate indifference to a known suicidal detainee by leaving him in a cell with a known, readily remediable ligature hazard and failing to implement reasonable suicide-prevention training or monitoring—the Court concludes that plaintiff has crossed the plausibility threshold. *See Iqbal*, 556 U.S. at 678-79; *Khalik*, 671 F.3d at 1191.

Accordingly, the Court denies the City's motion to dismiss the municipal-liability claim to the same limited extent it denies qualified immunity to Chief Franklin: plaintiff may proceed on the theory that the City, acting through Chief Franklin as a final policymaker, was deliberately indifferent to Mr. White's known suicide risk by maintaining equipment and supervisory practices that left an obvious ligature hazard unremedied and failed to provide reasonable suicide-prevention training or monitoring.

## IV.  NO LEAVE TO AMEND

Plaintiff did not request leave to amend the complaint in her dismissal briefing, nor did she file a stand-alone motion to amend. The Tenth Circuit has made clear that "[a]bsent a request to amend, a district court may dismiss the action rather

than sua sponte granting leave to amend." _Young v. Colo. Dep't of Corr._, 94 F.4th 1242, 1256 (10th Cir. 2024); _see also_ _Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C._, 956 F.3d 1228, 1236 (10th Cir. 2020); _Calderon v. Kan. Dep't of Soc. & Rehab. Servs._, 181 F.3d 1180, 1186 (10th Cir. 1999) ("[A] court need not grant leave to amend when a party fails to file a formal motion."). Consistent with this authority, the Court declines to sua sponte grant leave to amend.

## V.    CONCLUSION

Based on the foregoing, defendants' motion to dismiss [Dkt. 18] is hereby **GRANTED in part** and **DENIED in part**.

IT IS THEREFORE ORDERED that Chief Franklin's motion to dismiss is **DENIED**.

IT IS FURTHER ORDERED that Officer Booker's motion to dismiss is **GRANTED**, and he is entitled to qualified immunity.

IT IS FURTHER ORDERED that Officer Forehand's motion to dismiss is **GRANTED**, and he is entitled to qualified immunity.

IT IS FURTHER ORDERED that the City's motion to dismiss is **DENIED**.

DATED this 1st day of June, 2026.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE